IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANNABELL R. LOPEZ,

       Plaintiff,

vs.                               No.  02cv0990 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Lopez') Motion to Reverse and Remand for

a Rehearing **[Doc. No. 13]**, filed June 6, 2003, and fully briefed on June 24, 2003.  The

Commissioner of Social Security issued a final decision denying Lopez' claim for disability

insurance benefits and supplemental security income.  Having considered the arguments,

pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds

the motion to reverse is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Lopez, now 50 years old, filed her application for disability insurance benefits and

supplemental security income benefits on April 6, 2000, alleging disability since March 27, 2000,

due to cervical and lumbar radioculopathy and degenerative changes.  Tr. 73-75.  Lopez has a

high school education and has completed some college courses.  Her past relevant work was as a

postal carrier and mail clerk. On March 1, 2002, the Commissioner's Administrative Law Judge

(ALJ) denied benefits, finding that Lopez' impairments were severe but did not singly or in

combination meet or equal in severity any of the disorders described in the Listing of Impairments,

Subpart P, Appendix 1. Tr. 17.  The ALJ further found Lopez retained the residual functional

capacity (RFC) for "the performance of a restricted range of 'light' work as defined in her latest

functional capacity evaluation."  Tr. 19.  As to her credibility, the ALJ found Lopez tended "to

exaggerate her symptoms and limitations."  *Id.*  Lopez filed a Request for Review of the decision

by the Appeals Council.  On July 17, 2002, the Appeals Council denied Lopez' request for review

of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the

Commissioner for judicial review purposes.  Lopez seeks judicial review of the Commissioner's

final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States*

*Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must

meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington*

*v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing

42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the

Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is

not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Lopez makes the following arguments: (1) the ALJ's

finding that her mental impairment is not severe at step two of the sequential evaluation process is

not supported by substantial evidence and is contrary to law; (2) the ALJ's finding that she can

perform her past relevant work is not supported by substantial evidence and is contrary to law;

and (3) the ALJ's finding, at step five of the sequential evaluation process, that there was a

significant number of jobs she could perform is not supported by substantial evidence and is

contrary to law.

## A.  Mental Impairment

Lopez contends the ALJ erred when he found her mental impairment was not severe at

step two of the sequential evaluation process.  At step two, Lopez bears the burden to

demonstrate an impairment or combination of impairments that "significantly limits [her] physical

or  mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) & 416.920(c).   The

regulations define an impairment giving rise to disability benefits as one which "results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Basic work

activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple

instructions; use of judgment, responding appropriately to supervision, coworkers, and usual

work situations; and dealing with changes in a routine work setting."  SSR 85-28, 1985 WL

56856, at *3 (1985); *see also* 20 C.F.R. §§ 404.1521(b) & 416.921(b).  "[T]hese basic work

factors are inherent in making a determination that an individual does not have a severe medical

impairment." SSR 85-28, 1985 WL 56856, at *3 (1985).

The step two severity determination is based on medical factors alone, and "does not

include consideration of such vocational factors as age, education, and work experience."

*Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). At step two a claimant's burden is

"de minimis," but the mere presence of a condition is not sufficient to make a step-two showing.

*See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). The "claimed 'physical or mental

impairment must be of a nature and degree of severity sufficient to justify its consideration as the

*cause of failure to obtain any substantial gainful work*.'" *See Williamson v. Barnhart*, No. 02-

7067, 2003 WL 1194223, at **3 (10th Cir. Mar. 17, 2003)(quoting S.Rep.No.1987, 83d Cong.,

2d Sess., reprinted in 1954 U.S. Code Cong. & Ad. News 3710, 3730).

In his decision, the ALJ found:

Ms. Lopez began reporting depression during the course of treatment for her orthopedic
problems. She was given Prozac by her primary care physician, but has never pursued
any dedicated mental health treatment other than what was described as a two to three
month therapy program from August to September 2000. Ms. Lopez was given a
consultative psychiatric evaluation in March 2001 by R. Gonzales, M.D. She reported
having been depressed for the past several months due to the physical problems keeping
her from working, specifically that her hands hurt and that she could not sit still. Dr.
Gonzales considered her to exhibit depressive symptoms and to be experiencing a Major
Depression episode. She recommended that Ms. Lopez become involved in a psychiatrist
supervised medication management and therapy. Her prognosis was rated as good if she
followed this recommendation. Dr. Gonzales also recommended that Ms. Lopez see an
orthopedic physician to evaluate her physical problems.

As the discussion to follow will indicate, Ms. Lopez's physical condition has been
evaluated in great detail. When her mental status is evaluated under Section 12.04 of the
regulations, I concur with the state agency mental health consultants who could not deduce
the presence of a 'severe' impairment (Exhibit 7F). I also find no more than 'mild'
limitations in Ms. Lopez's activities of daily living and social functioning. She reported to
Dr. Gonzales that she was able to care for her basic activities of daily living. These
activities have been intact except when limited by her physical issues. Ms. Lopez reported
dealing with stress by isolating socially, but there is no evidence to indicate that she has

any intrinsic or significant problems dealing with others in an appropriate manner.  Dr. Gonzales' report specifically indicates that she is able to relate well to others.  Dr. Gonzales also rated her concentration and attention to be only mildly impaired, and noted that Ms. Lopez's short term and remote memory was intact.  This constitutes no more than 'mild' limitations in concentration, persistence, and pace.  No episodes of deterioration or decompensation in work or work-like settings are documented and no 'C' criteria are fulfilled.  Accordingly, other than her own documentary statements and testimony, there is little to substantiate Ms. Lopez's alleged limitations or (sic) support more than minimal mental problems.  She testified that Prozac was not helping her mood, but there is no indication that she has followed Dr. Gonzales' advice regarding specialized medication management.

Tr. 17.

Dr. Gonzales completed a psychiatric evaluation at the agency's request on March 29, 2001 .  Tr. 319-21.  Lopez reported to Dr. Gonzales that she had received individual and group therapy for a period of two to three weeks at Lovelace, from August to September 2000.  Tr. 319.  Lopez reported she had not seen any psychiatrist or therapist after the Day Program with Lovelace.  *Id.*  Since her discharge from the Day Program, Lopez had been receiving her antidepressant medication from her primary care physician.[1]  Significantly, Lopez reported "the main stressors in her life are her physical problems."  *Id.*  Dr. Gonzales concluded Lopez' "physical problem seems to be affecting her to the point that she is not able to hold a job."  *Id.* Dr. Gonzales also found Lopez was "able to relate well to others."  Tr. 320.  Finally, Dr. Gonzales found Lopez was able to take care of her basic activities of daily living.  Tr. 321.

Dr. Gonzales' mental status examination indicated, in relevant part, as follows: (1) Lopez was cooperative; (2) she related well to Dr. Gonzales; (3) she was able to answer questions

---

[1]  Dr. Thomas D. Cohn, a board certified physician in Physical Medicine and Rehabilitation and Lopez' treating physician, prescribed Prozac on February 16, 1999, "to see if [he] could get some central diminishing of pain and improve the patient's function."  Tr. 275.  Dr. Cohn felt this could "decrease the sensitivity of the nerve fibers and improve the patient's functional abilities." *Id.*  Thereafter, Dr. Brown, Lopez' primary care physician, continued to prescribe Prozac and later Zoloft to Lopez.

appropriately; (4) her mood appeared to be sad and depressed; (5) her thinking form and

progression appeared to be normal; (6) her content was showing depressive trends; (7) her

concentration and attention appeared to be mildly impaired; (8) she was not suicidal or homicidal;

(9) she appeared to have no hallucinations; (10) her memory (immediate, recent, and remote)

appeared to be intact; (11) she appeared to have insight into her problem; (12) her judgment

seemed to be normal; (13) she did not appear to have any depersonalization or derealization or

any major somatic complaints except for chronic pain; (14) she had normal and stable appetite and

weight; and (15) she had difficulty sleeping. *Id.*

On April 13, 2001, Dr. Leroy Galbaldon, a psychologist and nonexamining agency

consultant completed a Psychiatric Review Technique (PRT) form. Tr. 322-335. After reviewing

the record, Dr. Gabaldon opined Lopez' mental impairment was not severe. Tr. 322. Dr.

Gabaldon evaluated Lopez under Listing 12.04 (Affective Disorders) and found Lopez had

Depressive Syndrome. Tr. 325. Under the B criteria of the Listings, Dr. Gabaldon found Lopez

had mild limitations in her activities of daily living, mild limitation in maintaining social

functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of

decompensation. Tr. 332. "The regulations provide that a finding of 'no severe mental

impairment' is proper upon such ratings." *Ray v. Apfel*, No 99-7081, 2000 WL 342483, at \*\*3

(10th Cir. April 3, 2000)(citing 20 C.F.R. § 404.1520a(c)(1)). Dr. Gabaldon noted "Ms. Lopez

has no formal psychiatric history. She is on psychotropics prescribed by her treating physician.

There is no evidence of ongoing thought disorder or severe cognitive limitation. Her daily

activities are intact except when limited due to physical issues." Tr. 334.

The ALJ cited to Dr. Gonzales' and Dr. Gabaldon's evaluations and agreed with Dr.

Gabaldon that Lopez' mental impairment was not severe.  Substantial evidence supports this

finding.  Dr. Gonzales specifically found Lopez could "relate well to others" which would indicate

Lopez could relate well to others in a work setting.  Dr. Gonzales also found Lopez had no

problems understanding and had normal judgment.  Additionally, Dr. Gonzales found Lopez'

concentration and attention were only mildly impaired and her thinking form and progression

were normal.  As required by the regulations, the ALJ considered these relevant "basic work

factors" in making his determination that Lopez did not have a severe mental impairment.  *See*

SSR 85-28, 1985 WL 56856, at *3 (1985).  The ALJ also considered Lopez' failure to "pursue

any dedicated mental health treatment" and her failure to follow "Dr. Gonzales' advice regarding

specialized medication management."  Tr. 17.

Lopez advances the following arguments in support of her contention that the ALJ's step-

two determination that her mental impairment is not severe is not supported by substantial

evidence and is contrary to law: (1) Dr. Gonzales found she had Major Depression, recurrent

episode; (2) Dr. Gonzales assigned her a Global Assessment of Functioning Score[2] of 50; (3) Dr.

Gonzales recommended she see a psychiatrist for medication management; and (4) Dr. Gonzales

recommended she participate in intensive individual and family therapy.  Pl.'s Mem. in Supp. of

Mot. to Reverse and Remand for a Rehearing at 4-5.

---

[2] Global Assessment of Functioning (GAF score) is a subjective determination which
represents "the clinician's judgment of the individual's overall level of functioning."  American
Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th
ed. 2000) (DSM-IV-TR).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent
danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene,
or serious suicidal act with clear expectation of death.).  DSM-IV-TR) at 34.

The record indicates Dr. Gonzales recommended Lopez have her antidepressant medication managed by a psychiatrist because Dr. Cohn had initially prescribed it for reasons other than depression and she reported the medication was helping "a little bit."  Tr. 319.  And, although Dr. Gonzales assigned a GAF score of 50 at the time of the evaluation, Dr. Gonzales also assigned a GAF score of 65 for the past year.  A GAF score of 65 indicates "Some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV-TR at 34.  Dr. Gonzales also recommended intensive individual and family therapy.  However, Lopez was not receiving any type of counseling or therapy at the time of Dr. Gonzales' evaluation even though she claimed to be suffering from depression.  It was appropriate for Dr. Gonzales' to recommend such treatment and not necessarily indicative of the severity of Lopez' depression.

Moreover, even if the Court were to accept that this evidence may tend to support Lopez' contention that her mental impairment is severe, there is substantial evidence to support the ALJ's finding that it is not.  It is not this Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1994).

## B.  Past Relevant Work

At step four of the sequential evaluation process**,** Lopez bears the burden of proving that her medical impairments prevent her from performing work she has performed in the past.  *See*

*Williams v. Bowen*, 844 F.2d at 751 & n.2.  A step-four analysis is comprised of three phases.  In

the first phase, the ALJ must evaluate a claimant's physical and mental residual functional

capacity, and in the second phase, he must determine the physical and mental demands of the

claimant's past work.  In the final phase, the ALJ determines whether the claimant has the ability

to meet the job demands found in phase two despite the mental and/or physical limitations found

in phase one.  *Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir. 1996)(citations omitted); *see*

*also*, See SSR 96-8p, 1996 WL 374184 at *3, SSR 82-62, 1982 WL 31386 at *4.  At each of

these phases, the ALJ must make specific findings.  *Winfrey,* 92 F.3d at 1023.

In this case, Lopez argues "the ALJ made no inquiry or findings at this level of the step

four determination."  Pl.'s Mem. in Supp. of Mot. to Reverse and Remand for a Rehearing at 7.

However, Lopez failed to explain to the Court how the ALJ's step-four determination was

flawed.  The ALJ determined Lopez' RFC and had the vocational expert (VE) describe Lopez'

past relevant work, which was that of general clerk.  Tr. 51-53.  The VE classified this work as

light, semi-skilled.  Tr. 52.  The ALJ then posed a hypothetical question to the vocational expert

which incorporated Lopez' impairments.  Specifically, the ALJ posed the following hypothetical

question:

> If we were to consider then hypothetically a person of the age, educational background and
> experience of the claimant and we were to find this person limited to light exertional level,
> this person needs to have an option or the ability to occasionally alternate between sit and
> stand, needs to be simple work with no excessive standing or walking, no frequent bending
> with no climbing or squatting.  With those limitations, would the individual be able to do
> any of he past relevant work indicated?

Tr. 52.  The VE opined it would preclude mail carrier but still allow general clerk.  Tr. 53.  The

Court finds that the ALJ's step-four determination was adequate.

Next, Lopez argues that both Dr. Cohn and Dr. Delahoussaye found she was capable of something less strenuous than light work.  The record belies Lopez' argument.  On May 15, 1999, Dr. Thomas G. Cohn found Lopez was still showing a marked degree of symptom magnification and had completed a functional capacity evaluation which he opined was invalid.  Tr. 267.  "Based on the invalid functional capacity evaluation," Dr. Cohn found no reason why Lopez could not return "to her previous level of work."  *Id.*   Lopez' previous work was that of a general clerk which is classified as light exertional work.  Tr. 142.  And, on July 14, 1999, Dr. Cohn opined Lopez could "return to work full duty."  Tr. 264.

Additionally, on June 9, 2000, Dr. Delahoussaye opined that Lopez' "examination indicates she is capable of doing light duty work" (Tr. 250), compromised by sitting and standing for no more than a half hour at a time for six hours out of an 8-hour work day. Tr. 214.  Dr. Delahoussaye, a board certified physician in Physical Medicine and Rehabilitation assumed Lopez' treatment after Dr. Cohn left the state.  On August 4, 2000, Lopez stated to Dr. Delahoussaye that Dr. Cohn had agreed to place her on long term disability and she didn't know what to do. Tr. 249.  Dr. Delahoussaye reminded Lopez of the results of the Functional Capacity Evaluation done on June 9, 2000.  The June 9, 2000 Functional Capacity Assessment indicated Lopez had the functional capacity to perform light work.  Tr. 138, 152.  DeAnn Cooper, the licensed occupational therapist who performed the Functional Capacity Assessment, noted Lopez exhibited symptom magnification and submaximal effort.  Tr. 139.  On August 4, 2000, Dr. Delahoussaye submitted an "Attending Physician's Report" to the U.S. Department of Labor, Office of Workers' Compensation Programs.  In this report, Dr. Delahoussaye indicated Lopez could perform "permanent light duty."  Tr. 248.

Dr. Davis, the agency consultant, evaluated Lopez and performed a thorough examination and also found Lopez could perform light duty work.  Tr. 361.  Dr. Davis stated "I do not see significant evidence of objective neurological or other problems for which, [it] would be necessary to advise her or (sic) to be more active, or to resume other activities like light duty work, if she wish (sic) to do so."  Tr. 303.  Dr. Davis also opined there was "some element of symptom amplification and/or exaggeration." *Id.*   The Court finds that the record does not support Lopez' contention that Dr. Cohn and Dr. Delahoussaye found she was capable of something less strenuous than light work.

Lopez also contends she has manipulative impairments that would affect her ability to perform the job of general clerk.   The record also does not support this contention.  The June 9, 2000 Functional Capacity Evaluation did not indicate any problems with simple grasping or fine manipulation.  Tr. 145.  The May 19, 1999 Functional Capacity Evaluation also did not indicate any problems with simple grasping or fine manipulation.  Tr. 164.  Additionally, Dr. Delahoussaye and Dr. Davis did not find any manipulative functional restrictions.

Finally, Lopez argues that the ALJ relied on Dr. Davis' consultative evaluation to deny her benefits.  Because Dr. Davis did not have Lopez' complete medical records, Lopez contends Dr. Davis' conclusions would have been different.  This argument has no merit.  It is clear from the ALJ's decision that he considered all the evidence before him.  Lopez' treating physician opined she was not disabled.  The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

12

other substantial evidence." 20 C.F.R. § 404.1527(d)(2).  In this case, Dr. Delahoussaye's

medical opinion that Lopez has the capacity to perform light duty work and thus is not disabled is

well supported and not inconsistent with other substantial evidence.  For the foregoing reasons,

the Court finds that substantial evidence supports the ALJ's finding that Lopez is not disabled.

      A judgment in accordance with this Memorandum Opinion will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**